## SETTLEMENT AGREEMENT AND GENERAL RELEASE

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** ("Agreement") is made and entered into by and between Adrian Carlisle (hereinafter referred to as "Carlisle") and Buckhead Collision, Inc., its respective officers, directors, partners, employees, parent, subsidiaries, consultants, affiliates and successors (hereinafter "BCI"). This Agreement constitutes the entirety of agreements and understandings between Carlisle and BCI, and no amendments to or modifications of this Agreement will be valid or binding unless made in writing and signed by Carlisle and BCI.

**WHEREAS** Carlisle worked for BCI; and

**WHEREAS** Carlisle no longer work with BCI; and

**WHEREAS** Carlisle caused a lawsuit to be filed against BCI styled *Adrian Carlyle v. Buckhead Collision, Inc.* in the United States District Court for the Northern District of Georgia case number 1:16-cv-02483-AT ("the Lawsuit");

**WHEREAS** the parties desire to compromise all disputes between them and to set forth their mutual understandings and agreements with respect thereto.

**NOW, THEREFORE,** in consideration of the payment of monies not available to other employees or persons, the receipt and sufficiency of which are hereby acknowledged, and in further consideration of the promises, covenants, and releases hereinafter set forth, the parties agree as follows:

1. (a) BCI agrees to pay Carlisle the gross sum of Twenty Eight Thousand Dollars ($28,000.00) in settlement of any and all claims Carlisle has in connection with his employment and termination of employment with BCI. BCI will remit this payment to Carlisle within ten (10) days of its receipt of proof of (1) his signature on this Agreement, and (2) the Court Approving the Parties Settlement, provided that Carlisle does not exercise his right of revocation as described in paragraph 10(g), below.

   (b) The parties agree that the ($28,000.00) will be paid as follows:

      (i) BCI shall issue one check to Carlisle in the amount of $8,170 less required withholdings and deductions.

      (ii) BCI shall issue a second check to Carlisle in the amount of $8,170 for alleged liquidated damages, for which a Form 1099 will issue.

      (iii) BCI shall issue a third check in the amount of $11,660 allocated as attorney's fees and expenses directly to The Molden Law Firm, LLC. Pursuant to Carlisle's designation of this sum as attorney's fees, BCI agrees that, so long as The Molden Law Firm, LLC provides a completed and executed Form W-9 with its Federal Tax Identification

1

Number, BCI will direct a Form 1099 to The Molden Law Firm, LLC for those monies and make no withholdings or deductions therefore.

 (c) Carlisle agrees that he will be responsible for the payment of his share of any federal, state, or local taxes or assessments found to be due upon this Settlement Agreement or any money or other benefits received pursuant to this Settlement Agreement, and that he will hold harmless and indemnify BCI against the assertion of any claim for any such taxes, assessments, or related interest or penalties asserted as a result of his failure to pay taxes on the payments made herein.

 (d) Carlisle agrees to dismiss with prejudice, the Lawsuit, upon receipt of the payments referenced in § 1(b).

2. Carlisle agrees that he has maintained, and will continue to maintain, in strict confidence the terms and existence of this Agreement, including the amount paid to him under this Agreement, and will not disclose the terms or existence of it to any person. Nevertheless, in response to an inquiry concerning Carlisle's allegations against BCI, Carlisle may respond *only* that the matter has been amicably resolved and cannot be discussed and, again, *may make this statement only in response to a specific inquiry received*. It is expressly agreed, however, that this prohibition does not apply to an accountant, tax advisor, financial advisor, spouse, or attorney of Carlisle, provided that person is shown this Agreement and agrees to abide by its terms of confidentiality and nondisclosure. Carlisle expressly agrees that any breach by such person shall be deemed to be a breach by him.

3. Carlisle confirms that he has no interest in employment or reemployment with BCI, its parents, subsidiaries, or affiliates, and he commits and promise that he resign his employment effective September 2, 2016 and will not apply for, seek, or accept employment with BCI, its parents, subsidiaries, or affiliates at any time in the future.

4. Carlisle forever and finally, release, settle, waive and discharges BCI and its parents, subsidiaries, affiliates and officers of and from any and all claims or causes of action arising or existing up to the date he signs this Agreement that he, or his heirs, executors, administrators, successors, or assigns has, may have, or claims to have against BCI, its parents, subsidiaries, consultants, predecessors, affiliates, directors, officers, agents, shareholders, employees, representatives, successors, and assigns. Specifically, Carlisle for himself, his heirs, his executors and his assigns hereby releases and forever discharges BCI, its parents, subsidiaries, predecessors, affiliates, directors, officers, agents, shareholders, representatives, employees, successors, and assigns from any and all claims or causes of action of any kind or nature that Carlisle has, may have or claims to have that arise out of or is related to his employment or termination from employment with BCI.

5. Without limiting the generality of the previous paragraph, it is expressly understood that Carlisle does hereby forever and finally release, settle, waive, reach full accord and satisfaction with, discharge, and acquit BCI and its parents, subsidiaries,

consultants, affiliates, directors, officers, agents, representatives, successors and assigns from any and all claims or causes of action of each and every kind and nature whatsoever that Carlisle has or may have or may accrue up to the date of this Agreement and that Carlisle has or may have or may accrue as a result of Carlisle's employment or cessation of employment with BCI, including, but not limited to, claims of discrimination, retaliation, wrongful termination, harassment, general negligence, negligent retention, negligent training and supervision, infliction of emotional distress, ratification, breach of contract, fraud, breach of implied covenant of good faith and fair dealing, misrepresentation, failure to promote, assault, battery, invasion of privacy, defamation, claims for any work-related injury or illness, or any other alleged act arising in tort or contract, or pursuant to any state, federal, or local law or ordinance, including any claim pursuant to state workers' compensation laws, the Employee Retirement Income Security Act, the Consolidated Omnibus Budget Reconciliation Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. §1981, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act and extinguishes all claims and causes of action that Carlisle did or could have asserted in the Lawsuit, including any and all claims of discrimination, and violations of the Fair Labor Standards Act. Moreover, Carlisle acknowledge that he has been paid all of his wages and overtime payments during his employment with BCI.

6. In furtherance of the commitments they make in paragraphs 4 and 5, and to terminate the processing of the Lawsuit, Carlisle specifically agrees to direct his counsel to execute the attached Joint Motion for Approval of Settlement (Exhibit A) and return it to counsel for BCI within seven (7) days of signing this Agreement.

7. Carlisle specifically acknowledges that this Agreement cannot in any way be construed as an admission of liability by BCI of any violation of federal, state, or local law, regulation, or the common law of Georgia or any other state, or of any policy or procedure of BCI or the public. Carlisle understands that, to the contrary, BCI expressly and firmly denies any liability to them and is merely buying its peace.

8. Carlisle acknowledge that BCI has paid to him all monies that he is due related to his employment with BCI at the time of executing this agreement and, further, that BCI has provided him with all benefits of employment that he is due at the time of executing this agreement. Carlisle expressly acknowledge that he has no claims against BCI related to these matters.

9. Carlisle understands and acknowledges that this Agreement is intended to fully, completely, and forever resolve all disputes between him and BCI based upon all events, omissions, or acts occurring on or prior to its execution, as well as all other issues or claims in any way arising out of or connected with his employment and termination of employment with BCI. Specifically, Carlisle acknowledges and agrees that he has been paid all amounts due for all hours worked including any overtime compensation due to him. Carlisle further acknowledges that this Agreement shall not be the subject of any cause of action against BCI, its officers or

agents, except to enforce the terms of this Agreement.

10. Pursuant to the provisions of the Older Workers' Benefit Protection Act, Carlisle expressly acknowledges that:

   (a) by entering into this Agreement, he is waiving all rights and claims he has or may have under the Age Discrimination in Employment Act of 1967, as amended by the Older Workers' Benefit Protection Act, arising out of or in any way connected with his employment or termination from employment with BCI;
   (b) he is aware that he is not waiving any rights or claims that may arise after the date this Agreement is executed;
   (c) this Agreement is written in a manner that he can understand and that he has, in fact, read and understands it;
   (d) the terms of settlement provide money to Carlisle that he would not otherwise be entitled to;
   (e) Carlisle is being given a period of 21 days within which to consider this Agreement before signing it;
   (f) Carlisle is hereby being advised to consult with an attorney before executing this Agreement and that he has, in fact, had the benefit and advice of an attorney during the Lawsuit and the negotiation and execution of this Agreement; and
   (g) Carlisle has seven (7) days following the date of execution of this Agreement to revoke it, and that he may do so only in writing, via certified mail or registered delivery, to the attention of Raanon Gal, Taylor English Duma LLP, 1600 Parkwood Circle, Suite 400, Atlanta, Georgia, 30339.

11. The parties agree that they will not directly or indirectly challenge any paragraph of this Agreement as invalid or unenforceable and will take no action contrary to any of its provisions other than as ordered by a court of law.

12. BCI agrees to only provide the dates of employment and amount of compensation to reference requests made directly to BCI management.

13. The parties agree that, except as expressly set forth herein, each will bear its own attorneys' fees, costs and expenses.

14. Because all parties to this Agreement have been represented by counsel during the preparation of and negotiation over its terms, the parties agree that the language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties. Should any provision of this Agreement be declared or be determined by any court or other body with proper jurisdiction to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement.

15. The laws of the state of Georgia shall govern the interpretation and performance of this Agreement should any dispute arise concerning or related to it. Furthermore, the Parties expressly agree to submit to the jurisdiction of the federal court system in the State of Georgia for any action of proceeding arising out of or relation to the terms of the agreement and agree that the exclusive venue of any action or proceeding arising out of or relating to the terms of this Agreement shall be in the federal courts of Georgia.

16. If any of the paragraphs set forth above are determined to be unenforceable, the Parties request that the court revise the covenant or covenants to make them enforceable to the maximum extent permitted by law. Each of these paragraph shall be construed as severable and independent agreements.

17. Carlisle represents, acknowledges, and asserts that he has entered into this Agreement knowingly and voluntarily after a reasonable time to consider it and that the only consideration he received for executing this Agreement is what is set forth herein. Carlisle further represents, acknowledges and asserts that he has had the advice of counsel during the negotiation and execution of this Agreement, that he has thoroughly discussed all aspects of this Agreement with his attorney, and that he fully understands the Agreement's meaning and intent.

IN WITNESS WHEREOF, we have hereunto set our hands and affixed our seals on the dates set forth below:

_____    Dated: Aug 31, 2016
Adrian Carlisle

_____    Dated: 8/31/2016
Buckhead Collision, Inc.